134 Nev., Advance Opinion 38

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

SAYEDBASHE SAYEDZADA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71731

**FILED**

MAY 2 4 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of 13 counts of possession of credit or debit card without cardholder's consent. Eighth Judicial District Court, Clark County; William D. Kephart, Judge.

*Affirmed.*

Philip J. Kohn, Public Defender, and Tyler C. Gaston and Deborah L. Westbrook, Deputy Public Defenders, Clark County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, John Thomas Jones, Chief Deputy District Attorney, and Charles W. Thoman, Deputy District Attorney, Clark County,
for Respondent.

_____

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

## OPINION

By the Court, SILVER, C.J.:

Sayedbashe Sayedzada was arrested after a security guard discovered Sayedzada hiding a woman's purse under his shirt; police later determined the purse had been stolen. The State charged Sayedzada with

18-901147

possession of a credit or debit card without the cardholder's consent. The case went to trial, and during voir dire, Sayedzada challenged several prospective jurors for cause. The district court allowed a traverse of those jurors before making its ruling. Sayedzada thereafter renewed his for-cause challenge as to two of the prospective jurors. The district court denied Sayedzada's challenges for cause, and Sayedzada used two peremptory challenges to exclude those two jurors from the jury panel. Sayedzada did not renew his challenge as to the other two jurors, and they were empaneled.

In this opinion, we first address whether Sayedzada waived his appellate argument of juror bias as to the two jurors he passed for cause below. We thereafter address juror bias and whether the district court abused its discretion by failing to strike the two challenged jurors for cause.

We first hold that a party waives the right to challenge a juror's presence on the jury on appeal where the party's appellate argument is based on facts known to the party during voir dire; the party consciously elected not to pursue, or abandoned, a challenge for cause on that basis; and the party accepted the juror's presence on the jury. We conclude that in this case, Sayedzada waived his arguments regarding the empaneled jurors. We thereafter turn to the issue of juror bias and distinguish between actual, implied, and inferable bias. We conclude the district court erred by denying one of Sayedzada's challenges for cause, but this error is harmless and does not warrant reversal.

*FACTS*

Sayedzada attacked a condominium-complex security guard who confronted him after the guard noticed he was hiding something under his shirt and acting suspiciously. The guard subdued Sayedzada and called the police. The guard discovered Sayedzada had a purse hanging around

his neck, which Sayedzada claimed to have found. The purse contained several credit cards belonging to a woman and her family. Additional credit cards were found scattered on the ground where Sayedzada had been sitting after the guard subdued him. Officers recovered a total of 13 credit cards. When police contacted the purse's owner, she told them she was unaware her purse, which she had left in her unlocked car the night before, had been stolen. The State charged Sayedzada with 13 counts of possession of a credit or debit card without the cardholder's consent, and he pleaded not guilty.

At the preliminary hearing, Sayedzada indicated that at trial he would seek to exclude evidence of the purse theft. The State stated it would not introduce that evidence, but acknowledged the jury would be able to draw that inference from the facts.

As relevant to this appeal, during voir dire, Sayedzada initially challenged prospective jurors 7, 29, 37, and 38 for cause. The district court allowed a traverse of the challenged jurors before making its ruling. After each side finished questioning the prospective jurors, Sayedzada renewed his challenges to prospective jurors 29 and 38, but expressly declined the court's invitation to make further challenges and did not renew his challenges as to prospective jurors 7 and 37. The district court denied Sayedzada's two challenges for cause without explanation, and Sayedzada used his peremptory challenges to exclude prospective jurors 29 and 38 from the jury panel. Prospective jurors 7 and 37 were empaneled, and Sayedzada accepted the jury panel without further objection. The jury convicted Sayedzada on all charges following a two-day trial. Sayedzada appeals.

## ANALYSIS

Sayedzada contends the district court's denial of his challenges for cause requires reversal because prospective jurors 7 and 37 were empaneled, which in turn prejudiced his case. Sayedzada also contends the

district court abused its discretion by denying his challenges for cause to prospective jurors 29 and 38.[1] We address these points in turn.

*Waiver of right to challenge jurors 7 and 37 on appeal*

Sayedzada argues the empaneled jury was not fair and impartial because it included jurors 7 and 37, whom he had initially objected to for cause below. Sayedzada claims these jurors gave answers during voir dire that indicated they were biased. When questioned at oral argument as to whether his failure to maintain an objection below waived the claim, Sayedzada conceded that he failed to renew his challenge for cause with respect to these jurors after they were traversed as to bias. But Sayedzada argued his counsel's actions below are irrelevant under *Blake v. State*,[2] which he contends requires this court to reverse the verdict if any biased juror is empaneled, regardless of whether the party challenged that juror for cause below.

---

[1]Sayedzada additionally argues the district court violated his constitutional rights by denying his fair-cross-section challenge without an evidentiary hearing. Sayedzada did not make a prima facie showing that the venire process systematically excluded a distinctive group in the community or that the district court selected the jury panel in an unfair manner, and accordingly, we conclude Sayedzada was not deprived of his right to a jury selected from a fair cross section of the community. *See Williams v. State*, 121 Nev. 934, 939, 125 P.3d 627, 631 (2005) ("The Sixth Amendment does not guarantee a jury or even a venire that is a perfect cross section of the community."). Sayedzada further argues the evidence was insufficient, the prosecutor engaged in misconduct, the district court abused its discretion when making various evidentiary findings, and cumulative error warrants reversal. We have carefully considered the parties' arguments on these additional points and conclude these claims lack merit.

[2]121 Nev. 779, 796, 121 P.3d 567, 578 (2005).

As an initial matter, *Blake* does not stand for the broad proposition Sayedzada argues. The Nevada Supreme Court concluded in *Blake* that, even had the district court abused its discretion by denying a for-cause challenge to a juror, the error was not reversible where the defendant failed to show, or even argue, "that any juror actually empaneled was unfair or biased." 121 Nev. at 796, 121 P.3d at 578. Notably, the appellant in *Blake* preserved his argument for appeal by challenging the juror below. *Id.* at 795-96, 121 P.3d at 578. Thus, *Blake* simply comports with the general rule echoed in other Nevada cases that erroneously failing to strike a juror for cause is not reversible error where the jury actually empaneled is impartial. *See, e.g., Preciado v. State*, 130 Nev. 40, 44, 318 P.3d 176, 178 (2014) ("A district court's erroneous denial of a challenge for cause is reversible error only if it results in an unfair empaneled jury."); *Weber v. State*, 121 Nev. 554, 581, 119 P.3d 107, 125 (2005) ("Any claim of constitutional significance must focus on the jurors who were actually seated, not on excused jurors."), *rejected on other grounds by Farmer v. State*, 133 Nev. ___, 405 P.3d 114 (2017); *see also Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (noting peremptory challenges "are a means to achieve the end of an impartial jury").

The issue before this court is whether a defendant may waive subsequent challenges to the seating of a juror where the record demonstrates the defendant was aware of the particular facts below; the defendant consciously elected not to pursue, or abandoned, a challenge for cause based on these facts; and the defendant accepted the juror's presence on the jury. The Nevada Supreme Court has held, albeit not recently, that a defendant does waive the right to challenge the seating of a juror under such circumstances. *See McCall v. State*, 97 Nev. 514, 516, 634 P.2d 1210,

1211 (1981); *State v. Hartley*, 22 Nev. 342, 357, 40 P. 372, 374 (1895); *State v. Anderson*, 4 Nev. 265, 279 (1868).

The Nevada Supreme Court first addressed this issue in 1868 in *Anderson*. 4 Nev. at 279. There, during voir dire, a juror stated "he had formed and expressed an unqualified opinion as to the guilt or innocence of the prisoner, but subsequently had modified that opinion." *Id.* Defense counsel "failed to challenge the juror for either implied or actual bias, but accepted him without objection." *Id.* Anderson attempted to challenge the juror on appeal, and the Nevada Supreme Court concluded he could not raise this objection on appeal. Specifically, the court held:

> If the prisoner accepts a juror without objection, whom he knows to have formed and expressed an unqualified opinion, he cannot, after verdict, raise this objection. If he willfully takes his chance with such a juror, he must abide the result. Otherwise a prisoner could always get a new trial by simply refusing to exercise his unquestioned right to challenge such jurors for implied bias.

*Id.*

The Nevada Supreme Court again addressed the issue of waiver in *Hartley*. 22 Nev. at 354-57, 40 P. at 373-74. In this case, during voir dire several jurors each "answered that he had formed an unqualified opinion as to the guilt or innocence of [Hartley]." *Id.* at 354, 40 P. at 373. Hartley accepted the jurors without objection and subsequently argued on appeal that because these jurors should have been disqualified, he was denied his right to a fair and impartial trial. *Id.* at 354-55, 40 P. at 373. Looking to the common law and Nev. Gen. Stat. § 4214 (1861),[3] the court found that,

---

[3]This statute was eventually codified in NRS 175.075 and repealed in 1967. 1967 Nev. Stat., ch. 523, § 447, at 1472.

under both, "a defendant could waive an objection to a juror, and that he did waive it unless the challenge was taken prior to the jury being completed; and especially was this the case when the ground of challenge was then known." *Id.* at 355-56, 40 P. at 373-74 (noting this view is further supported by caselaw, including *Anderson*). The court further held that "in such case, after verdict, [the defendant does not have a] constitutional ground for the objection that he has not been tried by a 'constitutional jury.'" *Id.* at 357, 40 P. at 374.

The Nevada Supreme Court has cited *Anderson* and *Hartley* on several occasions, recognizing their holdings that a defendant can waive the right to raise a challenge to juror bias on appeal. *See Maxey v. State*, 94 Nev. 255, 256, 578 P.2d 751, 752 (1978) (citing *Hartley* and holding where a defendant has knowledge of misconduct during voir dire, he must immediately assert his right to a mistrial or he will be deemed to have waived any alleged error); *Hanley v. State*, 83 Nev. 461, 464, 434 P.2d 440, 442 (1967) (citing *Anderson* and *Hartley* in context of determining whether a change of venue is warranted due to the inability to obtain an impartial jury); *State v. McMahon*, 17 Nev. 365, 370, 30 P. 1000, 1001 (1883) (citing *Anderson* in context of finding that a provision, which required a jury sworn to try an indictment for a felony be kept together until finally discharged by the court, may be waived); *State v. Borowsky*, 11 Nev. 119, 127 (1876) (citing *Anderson* in context of determining whether a defendant can consent to proceed with a misdemeanor prosecution with less than the full number of jurors required).

Finally, it appears the Nevada Supreme Court most recently addressed the issue of waiver in 1981 in *McCall*. 97 Nev. at 515-16, 634 P.2d at 1211. In that case, defense counsel received, before voir dire, a

juror's questionnaire that indicated she was a citizen of British Columbia. *Id.* at 516, 634 P.2d at 1211. There was no objection at the time of voir dire, but McCall moved for a mistrial after trial and sentencing, when he discovered the juror was a non-citizen. *Id.* at 516, 634 P.2d at 1211. On appeal, McCall alleged "he was denied his right to a jury trial before twelve citizens because one juror was an alien." *Id.* at 515-16, 634 P.2d at 1211. The court found McCall's failure to object to the seating of the non-citizen juror at the time of voir dire constituted a waiver of that claim. *Id.* at 516, 634 P.2d at 1211.

Although a significant amount of time has lapsed since *Anderson*, *Hartley*, and *McCall* were decided, the policy underlying the waiver rule remains sound. Parties should not be able to strategically place questionable jurors on the jury as a means of cultivating grounds for reversal should the verdict be unfavorable. As more recently observed by the Supreme Court of Appeals of West Virginia, the waiver rule "serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process." *State v. Tommy Y., Jr.*, 637 S.E.2d 628, 637 (W. Va. 2006) (quoting *State v. Marlow*, 888 S.W.2d 417, 420 (Mo. Ct. App. 1994)); *see also United States v. Brazelton*, 557 F.3d 750, 755 (7th Cir. 2009) (cautioning that allowing a defendant to intentionally forgo challenging a juror for cause and yet obtain a reversal based on that juror's presence on the jury would effectively allow defendants to "plant an error and grow a risk-free trial" (quoting *United States v. Boyd*, 86 F.3d 719, 722-23 (7th Cir. 1996))).

We therefore take this opportunity to reiterate that a party waives any challenge to the seating of a juror on appeal where the party was aware of the basis for the challenge at the time of voir dire, had the

opportunity to challenge the prospective juror on those facts but ultimately declined to do so, and approved the juror's presence on the jury panel. We emphasize that for the waiver rule to apply, the record must clearly demonstrate the party was aware of the salient facts and consciously chose to approve the juror for jury service rather than advance a challenge for cause. Where the record does not so demonstrate, a challenge to the seating of a juror may be reviewed for plain error. *See* NRS 178.602 (plain error); *Jeremias v. State*, 134 Nev. ___, ___, 412 P.3d 43, 48 (2018) (explaining NRS 178.602 provides a mechanism for review of a forfeited error); *Nelson v. State*, 123 Nev. 534, 543-44, 170 P.3d 517, 523-24 (2007) (reviewing an unpreserved challenge to an empaneled juror for plain error); *see also United States v. Olano*, 507 U.S. 725, 733 (1993) (distinguishing waiver, which occurs where a defendant intentionally relinquishes a known right, from forfeiture, the failure to timely assert a right).

Turning to the present case, Sayedzada was aware of the facts elicited during voir dire that he claims demonstrates jurors 7 and 37 were biased. And, in fact, Sayedzada initially attempted to challenge those jurors for cause. But Sayedzada elected to not renew his challenge after the traverse of the jurors. More to the point, Sayedzada intentionally bypassed two opportunities to challenge the jurors on the same facts he now raises on appeal: immediately following the traverse when he reasserted his for-cause challenge to prospective jurors 29 and 38, and again when the district court expressly asked whether either party had any further challenges and Sayedzada asserted he did not. Sayedzada thereafter accepted the jury panel. These facts demonstrate Sayedzada's intent below to relinquish his objection to these jurors and accept their presence on the jury panel. Accordingly, we conclude Sayedzada waived his right to make an appellate

argument as to the bias of these jurors, along with any objection that the presence of these jurors on the jury deprived him of his right to be tried by a fair and impartial jury.

*For-cause challenges to prospective jurors 29 and 38*

Sayedzada contends the district court abused its discretion by denying his challenges for cause to jurors 29 and 38 because both demonstrated bias in their voir dire answers and each had experiences similar to the victim's.

Under NRS 175.036(1), a party may challenge a prospective juror "for any cause . . . which would prevent the juror from adjudicating the facts fairly." The juror's qualification is a question of fact for the trial judge. *See* NRS 16.060; *Hall v. State*, 89 Nev. 366, 370-71, 513 P.2d 1244, 1247 (1973) (applying NRS 16.060, which pertains to civil cases, to a criminal trial). Thus, we generally will defer to the trial court's decision so long as the trial court sufficiently questioned the juror and determined the juror was unbiased and could be impartial. *See Preciado v. State*, 130 Nev. 40, 44, 318 P.3d 176, 178-79 (2014) (discussing the standard of review in challenges for cause); *see also United States v. Maloney*, 699 F.3d 1130, 1137-38 (9th Cir. 2012) (discussing cases where the jurors in question had experiences similar to the facts of the cases and the district courts' questioning of those jurors was sufficient to show their impartiality), *overruled on other grounds by United States v. Maloney*, 755 F.3d 1044 (9th Cir. 2014). When reviewing whether a juror demonstrated bias, the juror's statements must be considered as a whole. *See Weber v. State*, 121 Nev. 554, 581, 119 P.3d 107, 125 (2005).

The Nevada Supreme Court has repeatedly held district courts must strike for cause any juror whose voir dire answers demonstrate the juror's views would prevent or substantially impair the juror's ability to be

impartial and apply the law. *See, e.g., Khoury v. Seastrand*, 132 Nev. ___, ___, 377 P.3d 81, 88-89 (2016) (clarifying that prospective jurors whose voir dire answers demonstrate actual bias must be dismissed for cause); *Preciado*, 130 Nev. at 44, 318 P.3d at 178-79 (concluding the district court should have removed for cause a prospective juror whose answers cast doubt on her ability to be impartial); *Jitnan v. Oliver*, 127 Nev. 424, 431-32, 254 P.3d 623, 628-29 (2011) (holding that prospective jurors whose views would prevent them from performing their duties as jurors should be removed for cause). However, bias may also arise based on the juror's background or experiences and may exist even where the juror promises impartiality. *See Sanders v. Sears-Page*, 131 Nev. 500, 508-09, 354 P.3d 201, 206-07 (Ct. App. 2015); *see also United States v. Torres*, 128 F.3d 38, 45-48 (2d Cir. 1997) (addressing implied and inferable bias).

In *Torres*, the United States Court of Appeals for the Second Circuit defined three types of bias that provide grounds for removing a juror for cause: actual, implied, and inferable bias. 128 F.3d at 43-48. Actual bias, or bias in fact, arises where the juror demonstrates a state of mind that prevents the juror from being impartial. *Id.* at 43-44; *see also Sanders*, 131 Nev. at 507, 354 P.3d at 206 (addressing actual bias). Thus, the court will find actual bias where the juror admits to partiality or the juror's voir dire answers demonstrate bias. *Torres*, 128 F.3d at 43-44; *see also Preciado*, 130 Nev. at 44-45, 318 P.3d at 179 (reviewing voir dire answers for actual bias); *Jitnan*, 127 Nev. at 432, 254 P.3d at 629 (considering whether a juror who gave inconsistent answers demonstrated bias). A determination of actual bias is grounded in the court's adequate questioning of the juror regarding the juror's ability to apply the law impartially. *Torres*, 128 F.3d at 44. A district court has broad discretion to determine whether a juror's

answers evince actual bias, "as it is better able to view a prospective juror's demeanor than a subsequent reviewing court." *Khoury*, 132 Nev. at \_\_\_, 377 P.3d at 88 (quoting *Jitnan*, 127 Nev. at 431, 254 P.3d at 628).

In contrast, implied bias, or bias as a matter of law, depends solely on the juror's background and/or relationship to the parties or case, and exists independently of actual bias. *Torres*, 128 F.3d at 45. Thus, the juror's voir dire answers regarding the juror's ability to be impartial have no bearing on implied bias. *Id.* Under common law, implied bias exists in a narrow set of specific situations, most of which deal with the juror's relationship to the case, such as where the juror is related to or has worked with a party, or has some interest in the outcome of the case. *See id.*; *cf.* Nev. Gen. Stat. § 4220 (1861) (limiting implied bias to nine specific situations). The Nevada Legislature has codified elements of the common law's implied bias in the civil context, *see* NRS 16.050 (addressing challenges for cause), and this court has previously considered whether other situations may establish implied bias and require a court to remove a juror for cause. *See Sanders*, 131 Nev. at 508-09, 354 P.3d at 206-07. However, the Legislature has not codified a definition or prohibition on implied bias in the criminal context. As we conclude the facts in this case ultimately do not rise to the level of implied bias, we need not attempt to define its parameters here. *See Torres*, 128 F.3d at 46 ("[T]he doctrine of implied bias is reserved for 'exceptional situations' in which objective circumstances cast concrete doubt on the impartiality of a juror." (citing *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring))); *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990) (urging prudence in formulating categories that bar jurors).

A third type of bias, inferable bias, arises where the juror discloses some fact that "bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias." *Torres*, 128 F.3d at 47. Inferable bias is related to actual bias in that it derives from facts elicited during voir dire, but it is also distinct in that it does not rely upon the juror's admission of bias or the judge's evaluation of the juror's credibility. *Id.* Inferable bias is related to implied bias in that it exists independently of the juror's assertion of impartiality, but it is also distinct in that "the disclosed fact does not establish the kind of relationship between the juror and the parties or issues in the case that mandates the juror's excusal for cause." *Id.* Unlike the situation where mandatory disqualification arises because a juror is actually or impliedly biased, a judge may exercise his or her discretion to infer bias from the facts elicited during voir dire where those facts show an average person in the juror's situation would be unable to decide the matter objectively. *Id.* This discretion to infer bias enables courts to strike for cause jurors who either may have an interest in concealing their bias or may be unaware of it, but whose answers demonstrate that the juror cannot reasonably be expected to separate his or her own experiences from the facts at the core of the case and judge impartially. *Id.* at 47-48; *see Dennis v. United States*, 339 U.S. 162, 172-73 (1950) (Reed, J., concurring) (noting the court's decision that it would not imply bias to jurors based on their employer did not mean the court could not do so "when circumstances are properly brought to the court's attention which convince the court that Government employees would not be suitable jurors *in a particular case*" (emphasis added)).

Inferable bias is not the same as potential bias, which does not justify removing a juror for cause. *Compare Torres*, 128 F.3d at 46-48, *with Khoury*, 132 Nev. at ___, 377 P.3d at 89. Bias may be inferred where facts disclosed by the prospective juror during voir dire show an average person in the juror's situation would not be able to be unbiased. *Torres*, 128 F.3d at 46-48. For example, bias may be inferred where "a juror has engaged in activities that closely approximate those of the defendant on trial." *Id.* at 47. "[O]nce facts are elicited that permit a finding of inferable bias, then, just as in the situation of implied bias, the juror's statements as to his or her ability to be impartial become irrelevant." *Id.* On the other hand, potential bias is the suggestion of bias based on the juror's expressed doubts as to his or her impartiality and ability to follow the law. *See Khoury*, 132 Nev. at ___, 377 P.3d at 89. Unlike inferable bias, if a juror manifests potential bias, further questioning may either rehabilitate the juror or demonstrate impermissible bias if the juror's answers, taken as a whole, demonstrate the juror's state of mind "substantially impairs the juror's ability to apply the law and the instructions of the court in deciding the verdict." *Id.*

With this in mind, we turn now to Sayedzada's claim that the district court abused its discretion by denying his challenges for cause to prospective jurors 29 and 38.

*Prospective juror 29*

We are troubled by prospective juror 29's answers during voir dire. First, prospective juror 29 disclosed that she had past experiences similar to those of the victim in this case. Specifically, prospective juror 29 was the victim of credit card theft on several occasions and was also a victim of a vehicle burglary where her purse and other valuable items were stolen. And, critically, prospective juror 29 expressly and repeatedly doubted her

ability to be impartial as a result of her own victimization, stating, "It makes me very angry. . . . It makes me mad. I don't know if I could be impartial." Although after further questioning, prospective juror 29 asserted the experiences did not affect her view of the criminal justice system and claimed she could be fair and impartial, she immediately backtracked, reiterating that "[p]ersonally, it makes you angry, but who wouldn't be," and admitting that, despite her assertion of impartiality, she still "could be biased" by her experiences. Of even further concern, prospective juror 29 gratuitously opined that the role of a criminal defense attorney is to "get your client off the [ ] hook" and she firmly believed that as "a matter of integrity," a truly innocent defendant would necessarily want to "state [their] case personally." Unlike other prospective jurors, she did not retreat from these opinions upon further questioning.

We conclude the district court abused its discretion by denying Sayedzada's challenge for cause as to prospective juror 29.[4] The facts here show prospective juror 29 demonstrated actual bias. She expressly and repeatedly doubted her ability to be impartial, disparaged Sayedzada's constitutional right not to testify and the defense attorney's role in the case, and offered only a lukewarm claim of impartiality to counter those damaging statements. Prospective juror 29's statements as a whole demonstrated that her bias would have prevented or substantially impaired

---

[4]We note the district court's decision is particularly troubling here, where the district court failed to provide *any* reason for its decision and the bias is apparent from the record. *See Jitnan*, 127 Nev. at 433, 254 P.3d at 629 (noting district courts are encouraged to make particularized findings on the record when deciding a challenge for cause and the failure to do so hampers appellate review).

her ability to apply the law and the court's instructions. *See Khoury*, 132 Nev. at ___, 377 P.3d at 89.

We also determine that even if there was no actual bias, these facts would have supported striking prospective juror 29 for inferable bias. The district court was aware from the pretrial proceedings and voir dire that prospective juror 29 was the victim of the same key crimes underlying the charges: car burglary, purse theft, and credit card theft. And, critically, prospective juror 29's statements that these experiences made her "angry" and admissions that those experiences could bias her against the defendant show that she would be unable to separate her own experiences from those in this particular case. An objective evaluation of these facts supports a conclusion that an average person in prospective juror 29's position would not be able to decide the case objectively. Because the record supports an inference that prospective juror 29's similar experiences would have prevented her from deciding the matter objectively, the district court would have been within its discretion to infer bias and strike prospective juror 29 accordingly.[5] *See Torres*, 128 F.3d at 48 (affirming the decision to strike for cause a juror who had engaged in conduct similar to the conduct alleged against the defendant); *cf. Brioady v. State*, 133 Nev. ___, ___, 396 P.3d 822, 823-25 (2017) (noting that a juror's history of being molested as a child could have "very likely" supported a challenge for cause where the defendant was on trial for sexual assault of a child and lewdness with a child).

---

[5]We note, however, that credit card theft or compromise is especially commonplace in today's society and a juror's experience with such a crime is unlikely to support an inference of bias absent more particularized similarities to the victim's experience.

Although the district court should have granted the challenge for cause as to prospective juror 29, a district court's error in denying a challenge for cause is not grounds for reversal unless the defendant demonstrates both that he exhausted all of his peremptory challenges and that an empaneled juror was unfair or biased. *Preciado v. State*, 130 Nev. 40, 44, 318 P.3d 176, 178 (2014); *Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005). We conclude the error was harmless here. Sayedzada removed both prospective jurors 29 and 38 by peremptory challenge. Further, as we held above, he waived his arguments that jurors 7 and 37 were biased, along with any objection that the presence of these jurors on the jury deprived him of his right to be tried by a fair and impartial jury. And Sayedzada does not argue any other empaneled juror was biased. Accordingly, we conclude no relief is warranted. *See Preciado*, 130 Nev. at 44, 318 P.3d at 178.

*Prospective juror 38*

We conclude the district court did not abuse its discretion by denying the challenge for cause to prospective juror 38. Unlike prospective juror 29, prospective juror 38 did not express more than a possibility of bias arising from her experiences. Prospective juror 38 asserted she could be fair and impartial and that she did not believe her experiences would affect her ability to fairly judge the case. And although prospective juror 38 had been the victim of having her bank account and credit card information stolen, she did not have experiences closely similar to those of the victim here. Accordingly, the record does not show that prospective juror 38 harbored bias that would prevent her from applying the law or following the court's instructions. *See Khoury*, 132 Nev. at ___, 377 P.3d at 89; *Hall v. State*, 89 Nev. 366, 370-71, 513 P.2d 1244, 1247 (1973) (finding defendant was not entitled to a new trial because the fact that a juror was the victim

of a burglary committed on the first day of a burglary trial was not grounds to dismiss the juror as a matter of law, and there was no proof of actual bias on the part of the juror or facts from which to infer the juror was biased).

## CONCLUSION

A defendant is entitled to a fair and impartial jury, and the district court must remove biased jurors for cause. However, a party waives the right to challenge a juror's presence on the jury on appeal where the party's appellate argument is based on facts known to the party during voir dire; the party consciously elected not to pursue, or abandoned, a challenge for cause on that basis; and the party accepted the juror's presence on the jury panel. In this case, we conclude Sayedzada waived his challenges as to jurors 7 and 37.

In assessing juror bias, a district court must excuse a juror for cause for actual and implied bias, and may excuse a juror for inferable bias. The failure to excuse a biased prospective juror is reversible error only where the erroneous denial of the for-cause challenge results in an unfair empaneled jury. Here, although the district court abused its discretion by failing to strike for cause a prospective juror who demonstrated actual and

inferable bias, the error does not warrant reversal. Accordingly, we affirm Sayedzada's conviction.

_____, C.J.
Silver

We concur:

_____, J.
Tao

_____, J.
Gibbons